ADAM J. GUTRIDE (State Bar No. 181446)
adam@gutridesafier.com
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
L. JAY KUO (State Bar No. 173293)
jay@gutridesafier.com
**GUTRIDE SAFIER LLP**
835 Douglass Street
San Francisco, California 94144
Telephone: 415.271.6469
Facsimile: 415.449.6469

LEE A. WEISS (admitted *pro hac vice*)
lweiss@bernsweiss.com
**BERNS WEISS, LLP**
626 RXR Plaza
Uniondale, New York
Telephone: 516.222.2900
Facsimile:   818.999.1500

JEFFREY K. BERNS (State Bar No. 131351)
jberns@law111.com
**BERNS WEISS, LLP**
20700 Ventura Blvd., Suite 140
Woodland Hills, CA 91364
Telephone:  818.961.2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| JOHN MANCINI et al.,<br><br>          Plaintiffs,<br><br>     vs.<br><br>TICKETMASTER, et al.,<br><br>          Defendants. | CASE NO. CV-07-01459 DSF<br>CV-07-07509 DSF<br><br>**PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| CRAIG AND JULIE JOHNSON,<br><br>          Plaintiffs,<br>vs.<br><br>TICKETMASTER, et al.,<br><br>          Defendants. | DATE:      March 18, 2013<br>TIME:      1:30 p.m.<br>CTRM:     840<br>JUDGE:    Hon. Dale S. Fischer |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES .............................................1

I.  INTRODUCTION ..................................................................................1

II.  BACKGROUND FACTS AND DETAILS OF SETTLEMENT ........................2

    **A.**  LITIGATION HISTORY .................................................................2

    **B.**  SETTLEMENT NEGOTIATIONS ...................................................5

    **C.**  THE PROPOSED SETTLEMENT...................................................6

        1.  Monetary Relief.................................................................7

        2.  Administrative Expenses, Attorneys' Fees and Costs, Incentive Awards ............................................................7

        3.  Notice ..............................................................................8

III.  ARGUMENT ........................................................................................9

    **A.**  PRELIMINARY APPROVAL IS WARRANTED ...............................9

        1.  The Settlement is Presumed Fair .........................................9

        2.  Other Factors Also Demonstrate the Fairness of the Settlement ......................................................................10

            a.  The Strength of Plaintiffs' Case and the Risks of Further Litigation .................................................10

            b.  The Amount Offered in Settlement ................................11

    **B.**  THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CONDITIONALLY CERTIFIED .......................................................12

    **C.**  THE PROPOSED NOTICE IS ADEQUATE ....................................16

IV.  DATES FOR THE FINAL APPROVAL PROCESS....................................18

V.  CONCLUSION ....................................................................................19

# TABLE OF AUTHORITIES

## CASES

*In re Tobacco II Cases*, 46 Cal.4th 298 (2009) ......................................................17

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)...................................18

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001)...............................................15

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008)...........................................20

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004). ..................11

*Class Plaintiff v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)..........................9

*Clothesrigger v. GTE Corp.*,191 Cal. App. 3d 605 (1987) ..................................18

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974) .........................................19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................14, 15, 16

*In re Apple & AT&TM Antitrust Litig.*, 596 F.Supp.2d 1288 (N.D. Cal. 2008)........................................................................................................................17

*In re Juniper Networks, Inc.*, 264 F.R.D. 584 (N.D. Cal. 2009) .........................16

*In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 (N.D. Cal. 2008)........................................................................................................................10

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998)...............12

*Miletak v. Allstate Ins. Co.*, 2010 WL 809579 (N.D. Cal. 2010) ...................15, 18

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................................... passim

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (1999) ....................................................................................................................18

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)....................................................................................................................12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .......................................19

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010)............................................14

*Rosenburg v. I.B.M.*, 2007 WL 128232 (N.D. Cal. 2007)....................................19

*Ross v. Trex Co., Inc.*, 2009 U.S. Dist. LEXIS 69633 (N.D. Cal. July 30, 2009)................................................................................................1, 10

*Simpao v. Gov't of Guam*, 369 Fed. Appx. 837 (9th Cir. 2010)...........................19

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Stearns v. Ticketmaster*, 655 F.3d 1013 (9th Cir. 2011), *cert. denied,*
  2012 U.S. LEXIS 3259 (Apr. 23, 2012)..........................................................4

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ................................................14

*United Steel v. Conocophillips Co.*, 593 F.3d 802 (9th Cir. 2010) ......................16

*Valentino v Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir 1996) .........................17

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114 (E.D. Cal.
  2009)...........................................................................................................20

*Williams v. Gerber Products Co.,* 552 F.3d 934 (9th Cir. 2008) ........................17

*Williams v. MGM Pathe Communications Corp.*, 129 F.3d 1026 (9th
  Cir. 1997)......................................................................................................8

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) .............17

## RULES

Fed. R. Civ. Proc., Rule 23(c)(2)(B) ....................................................................16

## TREATISES

Conte & Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002).........9, 13, 14, 15

Wright & Miller, FEDERAL PRACTICE & PROCEDURE (3d ed. 2008) ....................16

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on February 4, 2013, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 840, before the Honorable Dale S. Fischer, Plaintiffs shall and hereby do move the Court for an order of:

(1) Preliminary approval of the settlement of this class action as set forth in the class action Settlement Agreement dated January 18, 2013 ("Settlement Agreement" or "Agreement");

(2) Preliminary approval, for settlement purposes only, of a settlement class defined as "all persons (other than Excluded Persons) who (a) made a purchase in the United States on the Ticketmaster.com website between September 27, 2004 and June 9, 2009, (b) thereupon became enrolled in the "Entertainment Rewards" discount coupon program via a process that included Ticketmaster's transfer of their credit or debit card information to EPI, (c) were subsequently charged for their membership in the Entertainment Rewards program, (d) did not receive a full refund of amounts charged, and (e) as of the date of Preliminary Approval, have not printed any coupon or applied for any cashback award in connection with the Entertainment Rewards program";

(3) Preliminary appointment of Gutride Safier LLP and Berns Weiss LLP as class counsel and Taylor Myers and Julie Johnson as class representatives;

(4) Entry of an order directing the dissemination of notice in the form and manner set forth in the Settlement Agreement; and

(5) Setting a Final Approval hearing on May 6, 2013, at 1:30 p.m. or as soon thereafter as the Court's schedule permits.  (A copy of the [Proposed] Order For Preliminary Approval is attached to the Settlement Agreement as Exhibit C and submitted separately herewith.)

This Motion is based on Federal Rule of Civil Procedure 23, this notice, the supporting Memorandum of Points and Authorities, the Declaration of Adam Gutride, the Declaration of Lee Weiss, and the pleadings and papers on file in this

1    action and any other matter of which this Court may take notice.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION**

3          This is a proposed settlement of putative class actions that have been pending

4  for over six years against Defendants Ticketmaster and Ticketmaster L.L.C.

5  (collectively, "Ticketmaster"); Entertainment Publications, Inc. ("EPI"); and

6  IAC/InterActiveCorp ("IAC").[1]  Class Representatives Julie Johnson and Taylor

7  Myers ("Plaintiffs" or "Class Representatives") now move for preliminary approval.

8          The proposed Settlement entitles every class member to obtain a refund of

9  amounts paid for Entertainment Rewards (excluding amounts already refunded), up

10  to $30 per claimant.  Defendants have agreed to pay up to $23 million to cover all

11  claims, as well as the costs of notice and administration, any fees and costs awarded

12  to Plaintiffs' Counsel, and any incentive awards to Plaintiffs. A copy of the

13  Settlement Agreement is attached as Exhibit 1 to the Declaration of Adam Gutride

14  in Support of Motion for Preliminary Approval of Class Action Settlement ("Gutride

15  Decl.").

16          The proposed Settlement falls within the standard for preliminary approval.

17  *See Ross v. Trex Co., Inc.*, 2009 U.S. Dist. LEXIS 69633 at *9 (N.D. Cal. July 30,

18  2009) (standard for preliminary approval is whether proposed settlement is "within

19  range of reasonableness").  There is a presumption of fairness because the settlement

20  was reached after substantial discovery and arms-length negotiations.  *See Nat'l*

21  *Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

22  Numerous other factors also strongly favor the proposed Settlement, including the

23  risks of further litigation and the informed opinion of experienced counsel on all

24  sides who have negotiated and approved it based upon their views of the strengths

25  and weaknesses of the claims and defenses.  *See id.* (finding that experienced

26  counsel's views regarding settlement are entitled to great weight).

27  _____

28  [1]  Defendants Ticketmaster, EPI and IAC are collectively referred to as
    "Defendants."

Accordingly, Plaintiffs request that the Court preliminarily approve the proposed Settlement, order that the proposed Notice be disseminated, and schedule a final approval hearing.

**II.    BACKGROUND FACTS AND DETAILS OF SETTLEMENT**

    **A.    LITIGATION HISTORY**

This litigation commenced on January 26, 2007, when a complaint was filed against Defendants in the Superior Court of California, County of Los Angeles, Case No. BC365298.   Plaintiffs allege that during the class period, Defendants enrolled customers on Ticketmaster's website into EPI's "Entertainment Rewards" program through a process that was likely to deceive reasonable consumers.  In particular, Plaintiffs allege that the enrollment process failed adequately to disclose that customers were being enrolled in an online coupon service offered by a different company and that they would be charged a recurring monthly fee for that service on the charge card they had used on Ticketmaster's website.  Plaintiffs further allege that the vast majority of enrollees who were charged for the Entertainment Rewards program did not use the program or otherwise benefit from it.  Excluding customers who have previously obtained a full refund, Plaintiffs allege that there are approximately 1,120,000 such customers and that the total paid by these customers (net of partial refunds) for membership in the program was approximately $85 million.  Plaintiffs plead the following statutory and common-law claims: violations of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.*; violations of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*; fraud, deceit and/or misrepresentation; conversion; breach of the implied covenant of good faith and fair dealing; and violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq*.

Defendants removed this case from state court on March 5, 2007, pursuant to

the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), *et seq*. (Dkt.# 1.)[2] Subsequently filed complaints concerning the same conduct by Defendants were related to and/or consolidated with this case.[3]

Following removal, Defendants filed a series of motions to dismiss Plaintiffs' CLRA damages claims.   (Dkt.# 10, 11.)  Defendants also moved to transfer the case to the Eastern District of Michigan.  (Dkt.# 15.)   On May 23, 2007, the Court dismissed Plaintiffs' CLRA damages claim but denied Defendants' motion to transfer. (Dkt.# 25.)   After the filing of an amended complaint in which additional plaintiffs joined (Dkt. # 55), Defendants again moved to dismiss the CLRA damages claim; that motion was granted and denied in part on October 31, 2007.  (Dkt.# 95.)  Defendants then answered Plaintiffs' complaint.

The parties then engaged in voluminous, hard fought discovery before Plaintiffs first moved for class certification.  In August 2008, the Court denied certification on all claims but granted Defendants permission to file a motion for summary judgment on the EFTA claim and granted Plaintiffs leave to take further discovery on numerosity of the proposed EFTA class should summary judgment be denied. (Dkt.# 277.)  Defendants moved for partial summary judgment on the EFTA claim, which the Court denied on November 24, 2008.  (Dkt.# 297.)   In December 2009,

---

[2] Unless otherwise stated, all docket numbers reference the *Mancini* action.

[3] The additional actions are the following:

(1) *T.M., et al v. Ticketmaster Corp.*, 2:07-cv-03344-DSF-JTL was filed May 22, 2007 and voluntarily dismissed September 17, 2007 when the plaintiffs joined an amended complaint in this case.

(2) *Stearns, et al v. Ticketmaster, Corp.*, 2:08-cv-00117-DSF-JTL, which was filed January 8, 2008, dismissed April 30, 2008, and whose dismissal was affirmed by the Ninth Circuit on August 22, 2011.  *See Stearns v. Ticketmaster*, 655 F.3d 1013 (9th Cir. 2011), *cert. denied,* 2012 U.S. LEXIS 3259 (Apr. 23, 2012)).

(3) *Johnson v. Ticketmaster, Corp.*, 2:08-cv-07509-DSF-JTL, which was filed November 13, 2008, dismissed by this Court on March 5, 2009, and whose dismissal was reversed and remanded by the Ninth Circuit.  *See Stearns*, 655 F.3d 1013.

the Court granted certification on the EFTA statutory damages claim (which is limited to $500,000 for the class) and denied certification on the EFTA actual damages claim.  (Dkt.# 369.) Plaintiffs appealed from the orders denying class certification and from the dismissal of the later filed suit(s), including the CLRA damages claim. The Court of Appeals affirmed in part, reversed in part, and remanded.  *See Stearns v. Ticketmaster*, 655 F.3d 1013 (9th Cir. 2011).  The Court of Appeal reversed the dismissal of the *Johnson* CLRA damages claim, directed the district court to reconsider the certification of the UCL claim on behalf of the Class, and gave guidance about the propriety of the CLRA claim on behalf of the CLRA/Fraud Subclass.   Defendants petitioned to the United States Supreme Court for certiorari and Plaintiffs opposed; the Supreme Court denied the petition.  *See Ticketmaster v. Stearns,* 2012 U.S. LEXIS 3259 (Apr. 23, 2012).

After remand, Defendants moved for judgment on the pleadings, arguing that the web pages adequately disclosed the charges and that the CLRA did not apply. (Dkt.# 402.)  The Court denied that motion on July 3, 2012.  (Dkt.# 454.)

Plaintiffs also renewed their motion for class certification.  (Dkt.# 398.)  The motion was briefed and argued on June 25, 2012.  (Dkt.# 445.)  The Court ordered further briefing, which was also submitted.   At the parties' request, the Court agreed to defer ruling on the renewed class certification motion to permit the parties to attend mediation.

Throughout the case, voluminous discovery was taken, after significant discovery battles.  Plaintiffs filed several joint stipulations regarding motions to compel, resulting in orders by Magistrate Judge Lum on September 20, 2007 (Dkt.# 61) and December 12, 2007 (Dkt.# 104).    Defendants unsuccessfully asked the Court to review both of these orders.  (Dkt.# 73, 106.)  As a result of these efforts, Plaintiffs obtained from Defendants, and ultimately reviewed, more than one hundred thousand pages of documents, the code that powered Defendants website enrollment process, a number of massive data tables of customer transactional and

usage information, as well as answers to hundreds of interrogatories and requests for admission.  (Gutride Decl., ¶ 4.)  Thirteen depositions were taken.  Plaintiffs also retained three expert witnesses, each of whom filed one or more detailed declarations.  (Id.)  Defendants similarly filed an expert declaration.

## B.   SETTLEMENT NEGOTIATIONS

The proposed Settlement was reached following many rounds of arms-length talks stretching over several years. (Id., ¶ 5.)  Settlement discussions began in the spring of 2008 after Plaintiffs completed Rule 30(b)(6) depositions and analyzed Defendants' document production and database of customer records.  The settlement talks were not fruitful.  Over the course of the litigation, the parties periodically held additional settlement discussions, but they too were not successful.

Following the filing of Plaintiff's renewed class certification brief, and this Court's denial of Defendants' motion to for judgment on the pleadings, the settlement negotiations intensified.  The parties retained Antonio Piazza of Mediated Negotiations, who conducted an all-day mediation on October 18, 2012 in San Francisco, California.  That mediation resulted in the settlement memorialized in the Agreement.   In the weeks following the mediated resolution, the formal settlement documents were drafted.  At the time of settlement, all counsel had full knowledge of the strengths and weaknesses of the claims and defenses due to the extensive discovery and motion practice that had preceded the settlement talks.  (Gutride Decl., ¶¶ 5-6.)

Based on their reasoned judgment, Plaintiffs' Counsel believes the proposed Settlement is fair and reasonable and should be preliminarily approved by this Court.   (Gutride Decl., ¶ 7.)   The evidence obtained in discovery showed that Defendants' Entertainment Rewards enrollment process was likely to (and did) deceive unsuspecting consumers.  Plaintiffs also maintain that Defendants knew of the deceptive nature of the Entertainment Rewards program.   However, Plaintiffs would have been required to prove that they had behaved *reasonably* in clicking

through the web screens that led to enrollment.  Defendants would have pointed to various disclosures and disclaimers on those pages and argued that the problem was not with Defendants' conduct, but with inattentiveness on the part of the consumers. Defendants also have argued that nearly all the people exposed to the web screens did *not* become enrolled, which might have led the jury to conclude that the minority who did become enrolled were behaving unreasonably. Plaintiffs further knew that even if they were able to prove that consumers had been reasonably deceived, there would be a further issue about whether post-enrollment emails or monthly credit/debit card statements adequately disclosed the $9 charge.  There was a risk that class members would recover nothing, or only for a single month. Finally, any judgment in Plaintiffs' favor would likely be appealed.  Thus, even in the best case, it could take years to get relief for class members.  (Id., ¶ 8.)

        With this Settlement, Plaintiffs have achieved their desired goal in this litigation—i.e., obtaining several months refunds for consumers. (During the litigation, Defendants also discontinued the challenged practices.)  While Plaintiffs would, of course, have liked to get more money, they still believe that a refund of $30—i.e., more than three months of unlawful monthly charges—is an exceedingly good result, as good or better than the likely recovery at trial.  (Id., ¶¶ 7-8.)

        Defendants, while continuing to deny all allegations of wrongdoing, also believe the Settlement is in their interest to avoid further expense, inconvenience, and interference with their ongoing business operations.

## C.    THE PROPOSED SETTLEMENT

        The Settlement Class is comprised of "all persons (other than Excluded Persons)[4] who (1) made a purchase in the United States on the Ticketmaster.com

---

[4] "Excluded Persons" means (1) the Honorable Judge Dale Fischer and any member of her immediate family; (2) Antonio Piazza and any member of his immediate family; (3) any government entity; (4) any of the Released Parties; and (5) any persons who timely opt out of the Settlement Class.

website between September 27, 2004 and June 9, 2009, (2) thereupon became enrolled in the "Entertainment Rewards" discount coupon program via a process that included Ticketmaster's transfer of their credit or debit card information to EPI, (3) were subsequently charged for their membership in the Entertainment Rewards program, (4) did not receive a full refund of amounts charged, and (5) as of the date of Preliminary Approval, have not printed any coupon or applied for any cashback award in connection with the Entertainment Rewards program." (Id., Ex. 1.)

Plaintiffs have established that there are approximately 1,120,000 Settlement Class members and that the total paid by these customers (net of partial refunds) for membership in the Rewards program was approximately $85 million. (Id., ¶ 4.)

### 1.   Monetary Relief

Every Settlement Class Member will have the right to receive a cash refund of amounts that the Settlement Class Member paid for membership in the Entertainment Rewards program that have not already been refunded to the Settlement Class Member by Defendants, up to a maximum refund of $30.  The maximum amount that Defendants have to pay to Settlement Class members is $23 million, less what is paid for costs of notice, settlement administration, incentive awards, and, Plaintiffs' attorneys' fees, costs and expenses.[5]

### 2.   Administrative Expenses, Attorneys' Fees and Costs, Incentive Awards

As part of the proposed Settlement, Defendants will pay all costs of notice and administration of the Settlement.  In addition, Plaintiffs' Counsel will request, and Defendants will not object to, incentive awards of $5,000 for each named plaintiff and attorneys' fees and expenses to Plaintiffs' Counsel of $4 million.  The incentive fee is designed to compensate the named plaintiffs for (1) the time and risk

---

[5] In the unlikely event that the total value of all claims exceeds the amount available after payment of notice, administration, incentive awards and Plaintiffs' attorneys' fees and costs, the per-claim payment will be reduced pro rata.  Plaintiffs estimate that there would have to be a 70% claim rate for such a reduction to occur.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

they took in prosecuting this action (including the risk of liability for Defendants'
costs) and (2) agreeing to a release much broader than the one that will bind
Settlement Class Members. The requested attorney fee and cost award equates to
approximately 17% of the $23 million in cash benefits made available to the
Settlement Class; Defendants have agreed that in this context, the settlement
structure is functionally equivalent to a reverting common fund under which fees
may be awarded as a percentage of the fund, as set out in *Williams v. MGM Pathe
Communications Corp.*, 129 F.3d 1026 (9th Cir. 1997).  Further, as of the filing of
this motion, the total lodestar worked by Plaintiffs' Counsel plus out-of-pocket
expenses is slightly greater than the $4 million that Plaintiffs will request.  The
request for fees, costs and incentive awards will be the subject of a separate motion
to be filed, and posted on the Settlement Website, at least 35 days before the final
approval hearing.

### 3.    Notice

The Claim Administrator will establish a Settlement Website, which shall
contain the settlement notices, a Contact Information page that includes address and
telephone numbers for the Claim Administrator and the Parties, the Settlement
Agreement, the signed order of Preliminary Approval, a printable version of the
Claim Form, and (when it becomes available) Plaintiffs' Counsel's application for
attorneys' fees, costs, expenses and incentive awards.

Not later than thirty (30) days following Preliminary Approval, the Claim
Administrator shall send the Email Notice via email to each Settlement Class
Member using information obtained from Defendants' databases.  The Email Notice
will describe the settlement and provide a link to the more detailed Long Form
Notice and the online Claim Form.  The Claim Administrator shall resend the Email
Notice via email to each Settlement Class Member no more than forty-nine (49) nor
less than forty-two (42) days prior to the initially scheduled hearing date for the
Final Approval.  If the initial Email Notice is returned as undeliverable, the Claim

Administrator shall send the Postcard Notice via first class mail to the Settlement Class Member's last known billing address based on Defendants' records, as updated through use of the National Change of Address Database.

Ticketmaster and EPI will also include the phrase "Click Here For Information On The Entertainment Rewards Class Action Settlement" on Defendants' Websites; that phrase will link to the Settlement Website.

## III.   ARGUMENT

### A.   PRELIMINARY APPROVAL IS WARRANTED

Rule 23(e) requires court approval of a class settlement.  There is, however, a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiff v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992).  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *DIRECTV*, 221 F.R.D. at 526, *citing* 4 Conte & Newberg, NEWBERG ON CLASS ACTIONS ("Newberg") § 11.50 at 155 (4th ed. 2002). At the preliminary approval stage, the Court's role is to determine, on a preliminary basis, whether the settlement is within the range of what might be considered "fair, reasonable, and adequate" to allow notice to the proposed settlement class to be given and a hearing for final approval to be set. *See Ross*, 2009 U.S. Dist. LEXIS 69633 at *9.

#### 1.   The Settlement is Presumed Fair

Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation." *DIRECTV*, *supra*, 221 F.R.D. at 528; 4 Newberg at § 11.24.  Before reaching the Settlement, the parties engaged in extensive, highly adversarial factual investigation, which included numerous depositions, document production and interrogatories.  (Gutride Decl., ¶¶ 4-6.)  At time of Settlement, there had been extensive briefing and argument, and orders on, virtually all significant legal issues.  Indeed, there had been a written

opinion by the Ninth Circuit, plus detailed written opinions of this Court regarding class certification, motions to strike, motions to dismiss, a motion for partial summary judgment, and a motion for judgment on the pleadings.  The parties were fully informed as to the viability of the claims and the risks to both sides if the case did not settle.

The parties negotiated the proposed Settlement in good faith, including months of intense negotiations.  (Gutride Decl., ¶¶ 5-6.)  Furthermore, counsel for each side, who are experienced class action attorneys, have fully evaluated the strengths, weaknesses, and equities of the parties' respective positions.  (Id.)  Their belief that the proposed Settlement fairly resolves their respective differences is entitled to considerable weight.  *See In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 at *4 (N.D. Cal. 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."); *DIRECTV*, 221 F.R.D. at 528 ("great weight" normally given to opinion of counsel regarding class settlement).

### 2.    Other Factors Also Demonstrate the Fairness of the Settlement

In addition to being presumptively valid, the settlement meets the "fairness" criteria considered by courts in evaluating class action settlements under Rule 23(e), even in the context of final approval.  Some of these final settlement approval criteria are discussed below.  *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

### a.    The Strength of Plaintiffs' Case and the Risks of Further Litigation

These factors survey the potential risks and rewards of proceeding with litigation, to weigh the likelihood of success against the benefits of an immediate settlement.  At the time the Settlement was reached, the Plaintiffs' renewed motion for class certification was pending and Defendants' motion for judgment on the pleadings had just been denied.  The litigation had been highly contentious, and the

parties strongly disagreed on Plaintiffs' ability to prove liability and damages. While Plaintiffs are confident in their positions and believe their claims are strong, Plaintiffs' Counsel are also experienced and realistic enough to know that the recovery and certainty achieved through settlement, as opposed to the uncertainty inherent in class certification, and the trial and appellate process, weighs heavily in favor of settlement.

This uncertainty is highlighted by the fact that Defendants have maintained throughout the litigation—and would continue to do so on summary judgment and at trial—that their disclosures in the Entertainment Rewards enrollment process were adequate to defeat Plaintiffs' claims of reasonable deception. Defendants have repeatedly argued that there were no misrepresentations or material omissions. Moreover, even if some reasonable consumers were deceived by the enrollment process, Defendants contend that the customers should have been put on notice by subsequent emails, and that they also had a responsibility to review their monthly credit/debit card statements to discover the charges. Defendants further contend that they freely gave refunds to customers who made timely requests to cancel. Accordingly, Defendants will assert that damages were, at best, minimal—i.e., equal to at most $9 for a single month. While Plaintiffs dispute and have adduced evidence to undermine Defendants' arguments, including evidence of Defendants' knowledge that customers were being misled, it was far from clear how the arguments would be resolved on class certification, summary judgment or trial. (Gutride Decl., ¶¶ 7-8.)

### b.     The Amount Offered in Settlement

This factor "assess[es] the consideration obtained by the class members in a class action settlement." *DIRECTV*, 221 F.R.D. at 527. "[I]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). "In this regard, it is well-settled law that a proposed

settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at 527, *citing Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Under the proposed Settlement, $23 million has been made available and Settlement Class members are eligible to make claims for up to $30. While a jury could conceivable require Defendants to refund all approximately $85 million paid by every class member, such a result is far from guaranteed. (Gutride Decl., ¶ 8.) If the trial resulted in a recovery of only one month's membership fee per class member, the recovery would be only $9 per class member, or just over $10 million.

## B. THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CONDITIONALLY CERTIFIED

When a class settlement occurs before class certification has taken place, a court may conditionally certify an action for settlement purposes. *See In re Wireless*, 253 F.R.D. at 633 ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). When certification is sought under Rule 23(a) and (b)(3), the Court's threshold task is to preliminarily determine whether the proposed settlement class satisfies the numerosity, commonality, typicality and adequacy requirements of Rule 23(a), and the predominance and superiority requirements of Rule 23(b)(3). *Id*. The parties have sought preliminary certification of the Settlement Class now, with that certification to be confirmed at the time of Final Approval.

Plaintiffs' renewed motion for class certification (filed March 4, 2012 (Dkt.# 442) was still pending at the time of settlement. At the hearing, the Court ordered additional briefing on typicality, which the parties submitted. Although Defendants opposed certification of the proposed class, they have agreed to its certification for settlement purposes.

All of the class certification elements are met here. Numerosity is met because Defendants' records confirm that there are approximately 1,120,000 members

1   of the Settlement Class (Gutride Decl., ¶ 4) and "joinder of all members is impracti-

2   cable." Rule 23(a)(1).  *See Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001)

3   (more than 40 claimants sufficient to establish numerosity); 1 Newberg at § 3.5.

4        Commonality under Rule 23(a)(2), which requires that there be common

5   questions of law or fact, is also present.  This requirement is construed permissively,

6   and there does not have to be "complete congruence" of common issues; even one

7   common issue is sufficient.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir.

8   2010); 1 Newberg at § 3.10 (the commonality standard is "easily met" for most set-

9   tlement classes).  Here, all claims arise from same uniform business practices, in that

10  each class member suffered the same injuries due to Defendants' allegedly deceptive

11  Entertainment Rewards enrollment process.  Each member either was exposed to the

12  same or a substantially similar enrollment and thus the same alleged misrepresenta-

13  tions, non-disclosures and omissions of fact are at issue with respect to all class

14  members.  (Dkt.# 402.)   Whether the alleged misrepresentations and omissions

15  were likely to mislead reasonable customers is a common question of fact.

16       Typicality under Rule 23(a)(3) requires that the representatives' claims be

17  "reasonably co-extensive with those of absent class members; they need not be sub-

18  stantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

19  1998).  This requirement is "'satisfied when each class member's claim arises from

20  the same course of events, and each class member makes similar legal arguments to

21  prove the defendant's liability.'" *Rodriguez*, 591 F.3d at 1124, *citing Armstrong v.*

22  *Davis*, 275 F.3d 849, 868 (9th Cir. 2001).  Class Representatives' claims regarding

23  the deceptive enrollment process are identical to the claim of the Settlement class

24  members.  (Dkt.# 467.)  Typicality is also aided by the fact that the "objective rea-

25  sonable consumer standard" applies to determine liability here under all the con-

26  sumer statutes in issue.  *See Miletak v. Allstate Ins. Co.*, 2010 WL 809579, *11

27  (N.D. Cal. 2010) (rejecting defendants' attack on typicality based on fact that objec-

28  tive reasonable consumer standard applied).

1    Adequacy under Rule 23(a)(4) concerns whether the class representatives will
2    "fairly and adequately protect the interests of the class."  This inquiry involves two
3    questions: "(1) do the named Plaintiff and their counsel have any conflicts of interest
4    with other class members and (2) will the named Plaintiff and their counsel prose-
5    cute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.  Both
6    requirements are met here. There is no antagonism between Class Representatives
7    and the class members, all of whom assert the same underlying claims based upon
8    the same injuries, arising in the same manner from the same uniform business prac-
9    tices. Class Representatives' interests are thus in line with the interests of the class
10   they represents because they seek the same relief as the class, based upon the same
11   claims and uniform business practices.  Class Representatives' adequacy is also
12   shown by their agreement to serve as representative plaintiffs; their retention of ex-
13   perienced, competent counsel, their production of documents and appearance for
14   deposition; their participation in responding to written discovery, their filing of dec-
15   larations in support of class certification and in opposition to Defendants' disposi-
16   tive motions, and their participation in the negotiation of this settlement.  (Gutride
17   Decl., ¶ 10.)

18       Counsel for Plaintiffs are competent and qualified to represent the Class.
19   Plaintiffs' Counsel has extensive experience with complex class actions, having
20   served as class counsel in numerous federal and state court consumer fraud actions
21   that have resulted in millions of dollars being returned to consumers.  (Gutride
22   Decl., Ex. 2.; Weiss Decl. Ex. 1.)  Numerous courts have repeatedly found Plain-
23   tiffs' Counsel to be adequate class counsel.  (Gutride Decl. Ex. 1; Weiss Decl. Ex.
24   1.); *see also* 1 Newberg § 3.24 at 418 (the competence and experience of class
25   counsel should be presumed in the absence of proof to the contrary).

26       The predominance requirement under Rule 23(b)(3) is also satisfied. "Pre-
27   dominance" is determined from the plaintiff's legal theory of the case; that is, the
28   relevant question is whether proving plaintiff's theory will involve mainly common

legal and factual issues or individual issues.  *See United Steel v. Conocophillips Co.*, 593 F.3d 802, 808-09 (9th Cir. 2010) (main question is whether plaintiff's legal theory was one in which common issues of law or fact would predominate over individual issues; whether plaintiff will in fact prevail is immaterial).  The predominance inquiry focuses on "the relationship between the common and individual issues"—as long as common issues "present a significant aspect of the case" and can be resolved in a single case, predominance is met.  *In re Juniper Networks, Inc.*, 264 F.R.D. 584, 590 (N.D. Cal. 2009), *citing Hanlon*, 150 F.3d at 1022); *see also* 2 Newberg at § 4.25.

Here, the claims in issue are based upon uniform business practices and standardized documentation, such as the Entertainment Rewards web-based enrollment process.  There are no predominating individual issues because, under Class Representatives' legal theories, the objective reasonable consumer standard applies to determining liability, as well as to the materiality of the alleged non-disclosures or alleged misrepresentations.  *See Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1089, 1092-93 (9th Cir. 2010) (predominance requirement met where state's consumer protection statute is based upon the objective reasonable consumer standard); *Williams v. Gerber Products Co.,* 552 F.3d 934, 938-39 (9th Cir. 2008) (reasonable consumer standard applies to California's consumer protection statutes); *see also In re Apple & AT&TM Antitrust Litig.*, 596 F.Supp.2d 1288, 1310-11 (N.D. Cal. 2008) (materiality for purposes of duty to disclose analysis determined by reasonable consumer standard); *In re Tobacco II Cases*, 46 Cal.4th 298, 326-27 (2009) (no showing of injury or reliance by absent class members required).

Finally, Rule 23(b)(3)'s superiority analysis essentially looks to alternative methods of adjudication and whether maintenance of a class action would be fair and efficient.  *See Valentino v Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir 1996); 2 Newberg at § 4.27.  Superiority is satisfied in the present case because: (1) prosecuting or defending separate actions at this stage would be impractical and

inefficient; and (2) to the parties' knowledge, there is no other litigation concerning this controversy.  (Gutride Decl., ¶ 12.);  *see also* Fed. R. Civ. Proc., Rule 23(b)(3). Here, there are a multitude of consumers who were injured in small amounts.  This "small individual damages" factor is significant and weighs heavily in favor of class certification, especially given the common scheme at issue.  *See Miletak*, 2010 WL 809579 at *13.[6]

### C.   THE PROPOSED NOTICE IS ADEQUATE

The proposed Notice Plan and Claim Form ("Notice") comports with the procedural and substantive requirements of Rule 23.  Under Rule 23, due process requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation.  *See* Fed. R. Civ. Proc., Rule 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("individual notice must be provided to those class members who are identifiable through reasonable effort").  The mechanics of the notice process are left to the discretion of the Court, subject only to the broad "reasonableness" standards imposed by due process.  *See* 7A Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1786 (3d ed. 2008)*; see also Rosenburg v. I.B.M.*, 2007 WL 128232 at *5 (N.D. Cal. 2007) (notice should inform class members of essential

---

[6] Because this action is being settled, the Court need not consider the manageability issues.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Furthermore, because Ticketmaster's headquarters are in California, the choice of law provision on its website dictates California law, and the operative decisions concerning the Entertainment Rewards enrollment process on the Ticketmaster website were made here, California law is applicable to all class members.  (Dkt.# 72, 167)*; see also Norwest Mortgage, Inc. v. Superior Court* (1999) 72 Cal. App. 4th 214 (upholding certification of a nationwide class in a consumer protection action against defendant with both its headquarters and principal place of business located outside the state of California for alleged wrongful conduct occurring in California); *Clothesrigger v. GTE Corp.* (1987) 191 Cal. App. 3d 605  (nationwide class could be certified in suit against foreign corporation for  allegedly fraudulent representations that had been prepared in and disseminated from California).

terms of settlement including claims procedure and their rights to accept, object or opt-out of settlement).

The proposed notice plan contemplates disseminating notice to each Settlement Class Member by (1) email on two occasions; (2) United States mail where email is unsuccessful; (3) publication on Defendants' websites; and (4) publication on a dedicated settlement website.  (Gutride Decl., Ex. 1.)

This multi-communication method remains the best notice practicable and is reasonably designed to reach the Settlement Class Members.  *See, e.g.*, *Simpao v. Gov't of Guam*, 369 Fed. Appx. 837, 838 (9th Cir. 2010) (notice plan was "best notice practicable" where direct notice was mailed to class members and supplemented by published notice); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1126-27 (E.D. Cal. 2009) (direct mailed notice supplemented by published notice in newspapers of general circulation in areas and languages designed to reach potential class members provided "best possible notice" to class members of settlement); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 56-59 (2008) (emailed summary notice directing class members to settlement website satisfied due process requirements).  Electronic notice is particularly appropriate here because the disputed transaction took place as part of an online purchase through Ticketmaster.

The proposed email and mail notices inform Class Members about the proposed Settlement; their right to opt out or object; the need to file a claim; a summary of settlement benefits; the prospective request for attorneys' fees, costs and incentives; and the fact that they will be bound by the judgment if they do not opt out.  The notices refer Class Members to the Settlement Website where they can obtain the long-form notice, which provides more details about the case and the settlement, the procedures for opting out or objecting, a fuller discussion of the release, and methods to obtain additional information.  The Settlement Website also contains a copy of the full settlement agreement and will contain the fee application

when filed.  (Gutride Decl., Ex. 1.)

Settlement Class Members who seek benefits under the Settlement need to fill out a simple Claim Form online.  They also have the option to print complete and mail the Claim Form to the Claim Administrator.  The Claim Form requires them to certify under the penalty of perjury (1) their name and address (2) the fact that they are members of the Settlement Class; and (3) the fact that, at the time of enrollment in the Entertainment Rewards program, they did not intend to enroll and did not agree to be charged for membership.

## IV.    DATES FOR THE FINAL APPROVAL PROCESS

Plaintiffs request that in connection with preliminary approval, this Court set a date for a final approval hearing to consider the fairness of the Settlement and to hear any comments from the Settlement Class Members, as well as dates for mailing and publishing Notice and deadlines for objections and opting out of the Settlement Class.  Plaintiffs propose the following schedule:

| Item | Proposed Due Date |
|---|---|
| Initiate Notice | 30 days after Preliminary Approval (April 17, 2013) |
| Motion for Final Approval; Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Award | 42 days before Final Approval hearing (May 6, 2013) |
| Objections, Requests to Appear, opt-outs | 28 days before Final Approval hearing (May 20, 2013) |
| Replies in support of Final Approval and motion for attorneys' fees, costs and incentive awards; response to objections | 14 days before Final Approval Hearing (June 3, 2013) |
| Final Approval Hearing | June 17, 2013 |
| End of Claim Period | 30 days after Final Approval (July 17, 2013) |

## V.   <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs respectfully request that this Court grant preliminary approval to the proposed class action settlement.

Dated: February 5, 2013

**Respectfully submitted,**
**GUTRIDE SAFIER LLP**

By:  /s/ Adam Gutride
Adam J. Gutride
Seth A. Safier
L. Jay Kuo

**BERNS WEISS LLP**
Lee A. Weiss (admitted *pro hac vice*)
Jeffrey K. Berns

*Counsel for Plaintiffs*